**IN THE COURT OF APPEALS OF IOWA**

No. 14-0243
Filed April 30, 2014

**IN THE INTEREST OF C.T.,**
      **Minor Child,**

**T.T., Father,**
      Appellant.
_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.


A father appeals the termination of his parental rights.  **AFFIRMED.**


Darren D. Driscoll of Johnson, Kramer, Good, Mulholland, Cochrane &

Driscoll, P.L.C., Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Cori Kuhn-Coleman, County Attorney, and Jordon Brackey,

Assistant County Attorney, for appellee.

Marcy Lundberg, Fort Dodge, for mother.

Jennifer Bonzer of Johnson & Bonzer, Fort Dodge, attorney and guardian

ad litem for minor child.


Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

A father, Travis, appeals an order terminating the parent-child relationship between him and his child, C.T. The juvenile court terminated Travis's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), (h), and (*l*) (2013). On appeal, Travis contends that the State failed to prove grounds for termination by clear and convincing evidence, that termination of the parent-child relationship is not in the child's best interest, and that termination was not necessary because the child is in the custody of a relative. After reviewing the record, we conclude Travis's appeal is frivolous—he has not demonstrated any interest in this child or demonstrated any reason why termination of his parental rights should not proceed.

C.T. was born in 2011 to Brianna and Travis. At the time of C.T.'s birth, the department of human services ("DHS") already had been involved with this family because another child of these parents was removed in 2009 after being born testing positive for amphetamines and methamphetamines. C.T. was removed in 2012 after a founded report of denial of critical care due to the parents' continued use of methamphetamine and marijuana. C.T. was placed with his maternal grandmother. C.T. has not returned to his parents' care since the date of removal.

Throughout the course of these proceedings, Travis has shown no interest in obtaining services, addressing his behaviors, or reuniting with C.T. Travis failed to appear for a family team meeting in September 2012. On November 7, 2012, C.T. was adjudicated in need of assistance. Travis failed to appear for the

adjudicatory hearing. In November 2012, Brianna stole fifty-eight hydrocodone pills from her mother for Travis. In December 2012, Brianna reported Travis was shooting her friends with a BB gun. She also reported domestic violence against her by Travis. In January 2013, the maternal grandmother took the child to visit the parents. Upon arriving at the house at eleven in the morning, the grandmother found beer and liquor on the floor, unknown persons sleeping on the floor, and drug roaches in the ashtray. Travis has not seen the child or made any attempt to see the child since that visit. Travis has not provided financial support or any other type of support for this child since removal. Travis has not engaged in any services or even had any contact with any DHS worker since February 2013. The DHS diligently tried to contact Travis to arrange for services and reunification efforts, but Travis never responded to the DHS. Indeed, Travis did not even bother to attend the termination hearing despite having actual notice of the hearing date, time, and location.

Travis has not preserved error for our review:

Despite receiving notice of the termination proceedings, the father did not appear at the hearing. The father did not object to the evidence presented, offer evidence, or raise any issue before the district court. As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal. Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal. Because the father did not present any evidence or lodge any objection alerting the juvenile court to his complaints, he has not preserved error for our review.

In re P.S., No. 11-0516, 2011 WL 2714169, at *1 (Iowa Ct. App. Jul. 13, 2011) (internal marks and citations omitted).

Even if Travis's counsel preserved some error by being present and resisting termination, we conclude the appeal is without merit. We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We will uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

A court's termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.* After reviewing the record and applying this three-step analysis, we conclude the order of the juvenile court should be affirmed.

There is clear and convincing evidence supporting each of the grounds for termination cited by the juvenile court. For example, as the recitation of facts

above demonstrates, there is clear and convincing evidence Travis has abandoned C.T. within the meaning of Iowa Code section 232.116(1)(b). There is no evidence that it would be in the child's best interest within the meaning of section 232.116(2) to maintain a parent-child relationship with Travis. Indeed, in his appeal brief, Travis does not identify any reason why it would be in the child's best interest to defer termination of Travis's rights. Finally, the statutory exception upon which Travis relies is not applicable here. Section 232.116(3)(a) provides the court need not terminate the parent-child relationship if a "relative has legal custody of the child." In this case, the DHS has legal custody of the child, although the child has been placed in the physical care of the grandmother. Accordingly, the statutory exception is not applicable. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Even if the statutory exception were applicable, the provision is permissive and not mandatory. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration."); *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011) (stating this provision is permissive and not mandatory). Here, C.T. is doing well in his placement with the grandmother. The grandmother has provided a safe and stable home, and she is capable of providing for the child's medical, financial, emotional, and social needs.

This child need not wait any longer for the missing-in-action father to become a responsible parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990)

("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable."). The judgment of the district court is affirmed.

**AFFIRMED.**